ROBERT S. BREWER JR.
United States Attorney
KATHERINE L. PARKER, SBN 222629
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
CAROLINE C. PRIME, SBN 220000
Assistant U.S. Attorney
REBECCA G. CHURCH, SBN 259652
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-9634/7125/7183/7721 / 619-546-7751 (fax)

Attorneys for Respondents

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATBAY KYDYRALI,<br><br>   Petitioner,<br><br>   v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security; et al.,<br><br>   Respondents. | Case No. 20cv0539 BEN AGS<br><br>**SUPPLEMENTAL DOCUMENTS** |

Attached are (1) Dr. Farabaugh's declaration and (2) updated guidance, dated April 4, 2020, from ICE on "COVID-19 Detained Docket Review." ICE has expanded the "list of categories of individuals identified as potentially being at higher-risk for serious illness from COVID-19."

Respectfully submitted,

s/ *Samuel W. Bettwy*
SAMUEL W. BETTWY
Assistant U.S. Attorney

ROBERT S. BREWER JR.
United States Attorney
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125 / 619-546-7751 (fax)

Attorneys for Respondents

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATBAY KYDRALI,<br><br>    Petitioner,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security; et al.,<br><br>    Respondents. | Case No. 20-cv-00539-AJB-AGS<br><br>**DECLARATION OF CAPTAIN PHILIP FARABAUGH, MD, U.S. PUBLIC HEALTH SERVICE, DEPUTY MEDICAL DIRECTOR FOR ICE HEALTH SERVICE CORPS (IHSC)** |

I, Captain Philip Farabaugh (CAPT) make the following statements under oath and subject to the penalty of perjury:

1. I am employed by U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), and currently serve as the Deputy Medical Director with ICE Health Service Corps (IHSC). I have held this position since April 18, 2016.

2. In my current position, I provide oversight and direction of the medical care to individuals being held in the custody of ICE, to include the Medical Facility at the Otay Mesa Detention Center (OMDC). The Medical Facility provides overall medical, dental and mental health care for the detained population, which includes both ICE detainees and U.S. Marshall (USMS) detainees.

3. CoreCivic manages the overall Otay Mesa Detention Center facility operations, security and transportation under contract with ICE.

1

4. IHSC comprises a multidisciplinary workforce that consists of U.S. Public Health Service Commissioned Corps (USPHS) officers, federal civil servants, and contract health professionals.

5. Since the onset of reports of Coronavirus Disease 2019 (COVID-19), ICE epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to field staff on screening and management of potential exposure among detainees.

6. In testing for COVID-19, IHSC is also following guidance issued by the Centers for Disease Control (CDC) to safeguard those in its custody and care.

7. Each detainee is screened for disabilities upon admission by an IHSC medical provider. Identified disabilities are further evaluated and reasonable accommodations are provided as medically appropriate.

8. At the OMDC Medical Facility, during intake medical screenings, detainees are assessed for fever and respiratory illness, are asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days, and whether they have traveled from or through area(s) with sustained community transmission in the past two weeks.

9. The detainee's responses and the results of these assessments will dictate whether to monitor or isolate the detainee.  Those detainees who present symptoms compatible with COVID-19 will be placed in isolation, where they will be tested.  If testing is positive, they will remain isolated and treated.  In case of any clinical deterioration, they will be referred to a local hospital.

10. In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness.  Cohorting is an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic.  This practice lasts for the duration of the incubation period of 14 days, because individuals with these and other communicable diseases can be contagious before they develop symptoms and can serve as undetected source patients.  Those that show onset of fever and/or respiratory illness are referred to a medical provider for evaluation.  Cohorting is discontinued when the 14-day incubation period completes with no new cases. Per ICE policy, detainees diagnosed with any communicable disease who require isolation are place in an appropriate setting in accordance with CDC or state and local health department guidelines.

11. The OMDC Medical Facility has the following medical capabilities:

    - The IHSC Medical Staff which manages both males and females, provides daily access to sick calls in a clinical setting and has an onsite medical infirmary, mental health and dental health services with the ability to admit patients at the local hospital for mental or medical health care.

12. As of 11:00 on April 6 2020, IHSC has the following information:

    a. There are 6 ICE detainee suspected cases of COVID-19 in the OMDC Medical Housing Unit (MHU) who are on medical observation are isolated per CDC guidelines. These detainees are isolated and are not housed in general population. Detainees are monitored daily for change in symptoms.

    b. Mr. Kydyrali is not one of the detainees that has shown signs or symptoms of COVID-19, nor is he currently being monitored in the OMDC MHU. He is currently placed in a cohort based on his exposure to a detainee that tested positive for COVID-19 in his housing unit. At this time, Mr. Kydyrali and all detainees within his housing unit are under full quarantine. The quarantine will remain in effect until the 14-day incubation period is completed following confirmation that there are no new cases of COVID-19.

    c. There are eight confirmed cases of COVID-19 in the Otay Mesa Detention Center. The detainees are currently located in the Medical Housing Unit at OMDC. One ICE detainee with more moderate symptoms is currently admitted to Alvarado Hospital. Confirmed cases with mild or no symptoms will be moved from the MHU and housed separately from the general population.

13. A review of Mr. Kydyrali's medical records does not indicate a history of lung disease. He is not considered high risk per CDC guidelines and would otherwise be housed in general population.

14. The Otay Mesa Detention Center has a population within approved capacity and is not overcrowded.

15. The Otay Mesa Detention Center has increased sanitation frequency and provides sanitation supplies as follows:

    a. CoreCivic – provides disinfectant spray, hand sanitizer, and soap in every housing unit at the jail. The administration is encouraging both staff and the jail general population to use these tools often and liberally.

    b. CoreCivic – provides disinfectants to staff and cleaning crews and CDC recommended cleaning and disinfection above and beyond normal activity have been implemented.

    c. CoreCivic – provides hand sanitizer to detainees and staff and cleans and disinfects each housing unit between shifts.

16. The Otay Mesa Detention Center has limited professional visits to noncontact visits and suspended in person social visitation and facility tours.

17. The Otay Mesa Detention Center custody staff is screening all staff and vendors when they enter the facilities including body temperatures.

18. IHSC medical staff are screening all detainee intakes when they enter the facilities including travel histories, medical histories and checking body temperatures and have procedures to continue monitoring the populations' health.

19. IHSC medical staff provide education on COVID-19 to staff and detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting to seek medical care if they feel ill. The facilities provide detainees daily access to sick call.

20. IHSC medical staff working with CoreCivic staff have identified housing units for the quarantine of patients who are suspected of or test positive for COVID-19 infection to be addressed as set forth in paragraphs 8, 9 and 10, *supra*.

    I declare, under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and based on information obtained from other individuals employed by ICE.

DATED: April 7, 2020    _____
Captain Philip Farabaugh, MD
Deputy Medical Director
ICE Health Service Corps
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement



From: Berg, Peter B
To:
Cc:

Subject: Updated Guidance: COVID-19 Detained Docket Review-- Effective Immediately
Date: Saturday, April 4, 2020 5:17:40 PM

==**UPDATE:** Please see the updated guidance below. The previous version of this guidance is rescinded.==

This message is sent from Peter B. Berg, (a)Assistant Director, Field Operations

**To:**     Field Office Directors and Deputy Field Office Directors

**Subject:**     COVID-19 Detained Docket Review

**Background:**

U.S. Immigration and Customs Enforcement (ICE) has taken a number of significant and proactive measures in response to the Coronavirus Disease 2019 (COVID-19) pandemic, in order to mitigate the spread of COVID-19 to aliens detained in its custody, its workforce, and stakeholders at its detention facilities. As more becomes known about the virus, ERO will continue to update its practices and guidance in this regard. General ICE COVID-19 guidance is available here and will be updated and supplemented on an ongoing basis.

On March 18, 2020, you were directed to review the cases of aliens detained in your area of responsibility who were over the age of 70 or pregnant to determine whether continued detention was appropriate. The Centers for Disease Control and Prevention (CDC) has developed a list of categories of individuals identified as potentially being at higher-risk for serious illness from COVID-19. Expanding on that list, ERO has identified the following categories of cases that should be reviewed to re-assess custody:

- Pregnant detainees or those having delivered in the last two weeks
- Detainees over 60 years old
- Detainees of any age having chronic illnesses which would make them immune-compromised, including but not limited to:
    - Blood Disorders
    - Chronic Kidney Disease
    - Compromised immune system (e.g., ongoing treatment such as chemotherapy or radiation, received an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications)
    - Endocrine disorders

- Metabolic disorders
- Heart disease
- Lung disease
- Neurological and neurologic and neurodevelopment conditions

As part of your ongoing application of the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (available here), please identify all cases within your AOR that meet any of the criteria above and validate that list with assistance from IHSC or your Field Medical Coordinator to ensure the conditions listed are still present and do result in the detainee potentially having a higher risk for serious illness from COVID-19.  After identifying a case as meeting any of the above criteria, you should review the case to determine whether continued detention remains appropriate in light of the COVID-19 pandemic.

The presence of one of the factors listed above should be considered a significant discretionary factor weighing in favor of release.  To be clear, however, it may not always be determinative.  Field offices must remain cognizant of the requirements of mandatory detention.  Section 236(c) of the Immigration and Nationality Act (INA) mandates the detention of certain categories of criminal and terrorist aliens during the pendency of removal proceedings.  Such aliens may not be released in the exercise of discretion during the pendency of removal proceedings even if potentially higher-risk for serious illness from COVID-19.  INA § 236(c); 8 C.F.R. § 236.1(c)(1)(i).  Such aliens may only be released following a final order issued by an immigration judge, the Board of Immigration Appeals, or a federal court granting the alien relief, dismissing proceedings, or terminating proceedings.  Similarly, pursuant to section 241(a)(2), certain criminal and terrorist aliens subject to a final order of removal may not be released during the 90-day removal period even if potentially higher-risk for serious illness from COVID-19.  INA § 241(a)(2).  For alien's subject to discretionary detention under section 236(a), please remember that release is prohibited, even if the alien is potentially higher-risk for serious illness from COVID-19, if such release would pose a danger to property or persons.  8 C.F.R. § 236.1(c)(8).

When reviewing cases of alien's subject to discretionary detention under 236(a), the following must be completed:
- **Cases involving any arrests or convictions for any crimes that involve risk to the public regardless of the date of arrest or conviction must be reviewed and approved by a Deputy Field Office Director (DFOD) or higher before a determination is made to release.**
    - Examples of crimes that involve a risk to the public include any crime that: involves any form of violence, driving while intoxicated, threatening behaviors, terroristic threats, stalking, domestic violence, harm to a child, or any form of assault or battery.   This list is not intended to be

   comprehensive. If there is any doubt whether a crime involves risk to the public, consult with your Office of the Principal Legal Advisor (OPLA) field location and your respective Deputy Assistant Director for Domestic Operations before a custody redetermination is completed.
- You may consider the age of an arrest or conviction as a mitigating or an aggravating factor, but the age of an arrest or a conviction does not automatically outweigh public safety concerns.

With regard to arriving aliens and certain other aliens eligible for consideration of parole from custody, under current circumstances and absent significant adverse factors, the fact that an alien is potentially higher-risk for serious illness from COVID-19, may form the basis for a determination that "continued detention is not in the public interest," justify release under 8 C.F.R. § 212.5(b)(5).

For other aliens for whom there is discretion to release, field offices remain responsible for articulating individualized custody determinations, taking into consideration the totality of the circumstances presented in the case. The fact that an alien is potentially higher-risk for serious illness from COVID-19 should be considered a factor weighing in favor of release. You may also consider alternatives to detention consistent with ICE ATD policies, if ATD is determined to sufficiently mitigate the risk of flight.

Any releases attributed to reviews of COVID-19 susceptibility shall be documented in the ENFORCE Alien Removal Module (EARM) under Special Class - COVID-19 Chronic Care Release. As previously communicated, these individuals should be placed on ATD if possible.

Please contact your local OPLA field location should you have any questions or concerns regarding your authority to release in any individual case.

**For any questions on this guidance, please contact your respective Deputy Assistant Director for Domestic Operations.**

**Limitation on the Applicability of this Guidance**. This message is intended to provide internal guidance to the operational components of U.S. Immigration and Customs Enforcement. It does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.