UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATABY KYDRALI,<br><br>                              Petitioner,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of<br>Homeland Security; et al.,<br><br>                              Respondents. | Case No.:  3:20-cv-00539-AJB-AGS<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S SECOND MOTION FOR TEMPORARY RESTRAINING ORDER; AND**<br><br>**(2) GRANTING PETITIONER'S MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>(Doc. Nos. 12, 18) |

Presently before the Court is Petitioner Sataby Kydrali's second motion for temporary restraining order, (Doc. No. 12), and Petitioner's motion to file documents under seal, (Doc. No. 18). Respondents only oppose the second motion for temporary restraining order. (Doc. No. 15.) For the reasons set forth below, the Court **DENIES** the second motion for temporary restraining order and **GRANTS** the motion to file documents under seal.

/ / /

/ / /

1

1

**BACKGROUND**

2          Petitioner is a thirty-one-year-old asylum seeker from Kazakhstan currently detained

3    at Otay Mesa Detention Center ("OMDC"). (Doc. No. 3 ¶ 17.) On July 5, 2018, he applied

4    for admission into the United States. (*Id.* ¶ 18.) He was detained by the United States

5    Customs and Border Protection officers and referred to United States Citizenship and

6    Immigration Services (USCIS) for a credible fear interview with an asylum officer. (*Id.*)

7    The asylum officer determined that he had a credible fear of persecution or torture in

8    Kazakhstan. (*Id.*) USCIS issued and filed a notice to appear and initiated removal

9    proceedings. (*Id.*)

10         On August 21, 2018, ICE granted Petitioner's parole conditioned on his paying a

11   $10,000 bond. (*Id.* ¶ 19.) However, ICE rescinded its parole decision as the Kazakhstani

12   authorities issued an Interpol Red Notice. (*Id.*)

13         On October 10 and 15, 2019, Petitioner filed a petition for review and motion for

14   stay of removal in the Ninth Circuit. (*Id.* ¶ 21.) The Ninth Circuit granted a temporary stay

15   of removal automatically. (*Id.*) In October or November 2019, Petitioner again requested

16   parole, but was denied that request orally by an ICE officer in December 2019. (*Id.*)

17         On November 15, 2019, an immigration judge denied Petitioner's bond hearing

18   request. (*Id.* ¶ 23.) The immigration judge also denied his motion to reconsider on January

19   15, 2020. (*Id.* ¶ 24.)

20         On February 21, 2020, Petitioner again requested that ICE parole him, but ICE

21   denied his request on March 6, 2020. (*Id.* ¶ 25.)  Petitioner filed a fourth parole request on

22   April 3, 2020. (Doc. No. 12-1 at 8.) The request was denied on April 13, 2020, however,

23   Petitioner's counsel explained to the deportation officer that he was concerned for

24   Petitioner's high risk medical history. (*Id.*) The deportation officer stated that he would

25   bring that fact up to the ICE medical staff and management and has not yet provided an

26   update to Petitioner's counsel. (*Id.*)

27         On March 23, 2020, Petitioner commenced this action. (Doc. No. 1.) On April 3,

28   2020, Petitioner filed his first motion for temporary restraining order. (Doc. No. 4.) In his

1  first motion for temporary restraining order, Petitioner alleged that he was at a higher risk

2  for severe side effects from COVID-19. (*Id.*) On April 8, 2020, the Court denied

3  Petitioner's motion for temporary restraining order. (Doc. No. 10.) On April 23, 2020,

4  Petitioner filed his second motion for temporary restraining order. (Doc. No. 12.)

5  Respondents oppose this motion. (Doc. No. 15.) On April 30, 2020, Petitioner filed a notice

6  of supplemental authority, (Doc. No. 16), and on May 1, 2020, Petitioner filed a notice of

7  supplemental facts, (Doc. No. 17). Respondents also oppose those notices. (Doc. No. 22.)

8  This order follows.

9  **LEGAL STANDARD**

10  A temporary restraining order may be granted upon a showing "that immediate and

11  irreparable injury, loss, or damage will result to the movant before the adverse party can

12  be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order, as a

13  form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable

14  harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods,*

15  *Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

16  A request for a TRO is evaluated by the same factors that generally apply to a preliminary

17  injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

18  (9th Cir. 2001). However, a TRO is an "extraordinary remedy" and is "never awarded as

19  of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v.*

20  *Geren*, 553 U.S. 674, 689–90 (2008)). Instead, the moving party bears the burden of

21  demonstrating four factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to

22  suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities

23  tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

24  Although a plaintiff must satisfy all four of the requirements set forth in *Winter*, the

25  Ninth Circuit employs a sliding scale whereby "the elements of the preliminary injunction

26  test are balanced, so that a stronger showing of one element may offset a weaker showing

27  of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

28  / / /

**DISCUSSION**

1

2        Petitioner again seeks a temporary restraining order directing his immediate release

3   from immigration detention because of his individualized circumstances of his prolonged

4   detention and his medical history coupled with the dangers that COVID-19 pose. The Court

5   will address each factor presented in *Winter* in turn. However, first, the Court will briefly

6   address Petitioner's motion to file documents under seal.

7        A.     Petitioner's Motion to File Documents under Seal

8        Petitioner seeks to file unredacted Immigration and Customs Enforcement Health

9   Service Corps ("IHSC") medical records under seal because of their inherent confidential

10  and private nature, and they contain "sensitive . . . information . . . in references too

11  numerous to redact." *See, e.g.*, *A.B. ex rel. W.F.B. v. San Francisco Unified Sch. Dist.*, No.

12  C 07-4738-PJH, 2007 WL 2900527, at *1 (N.D. Cal. Oct. 2, 2007). Respondents do not

13  oppose Petitioner's motion to file these records under seal.

14       Courts have historically recognized a "general right to inspect and copy public

15  records and documents, including judicial records and documents." *Nixon v. Warner*

16  *Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one

17  'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point."

18  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz*

19  *v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to

20  overcome this strong presumption, a party seeking to seal a judicial record must articulate

21  compelling justifications for sealing that outweigh the public policies favoring disclosure.

22  *See Kamakana*, 447 F.3d at 1178–79. "In turn, the court must 'conscientiously balance[]

23  the competing interests' of the public and the party who seeks to keep certain judicial

24  records secret." *Id.* at 1179 (citation omitted).

25       After a careful examination of the documents, the Court agrees with Petitioner and

26  finds that despite the generally recognized right to inspect records and documents in this

27  country, Petitioner has overcome this strong presumption of access by providing

28  compelling reasons to seal. *See Nixon*, 435 U.S. at 597 & n.7; *see also Pintos v. Pac.*

1    *Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (holding that a "compelling reasons

2    standard applies to most [motions to seal] judicial records.") (internal quotation marks

3    omitted). Accordingly, the Court **GRANTS** Petitioner's motion to file documents under

4    seal.

5              B.      Likelihood of Success on the Merits

6              Petitioner asserts that he is likely to succeed on his merits because he has been held

7    since July 2018 under 8 U.S.C. § 1225(b), INA § 235(b), without providing him an

8    individualized bail hearing before a neutral adjudicator. (Doc. No. 12-1 at 25–26.)

9    Petitioner asserts that the six factor test presented in *Jamal A. v. Whitaker*, 358 F. Supp. 3d

10   853 (D. Minn. 2019) demonstrates that Petitioner's detention is unreasonably prolonged.

11   Petitioner has been detained for over twenty-one months (factor 1), the Ninth Circuit has

12   stayed his removal (factor 2), his detention is tantamount to penal confinement and

13   COVID-19 is creating dangerous conditions (factor 3), he has not engaged in dilatory

14   tactics to delay his removal (factor 4), his case's delay is due to BIA's and the Ninth

15   Circuit's crowded dockets (factor 5), and the likelihood that proceedings will culminate in

16   a final removal order is neutral (factor 6).

17             However, as the Court previously held on April 8, 2020 regarding Petitioner's first

18   motion for temporary restraining order, the habeas petition can be handled in the normal

19   course of business. Petitioner has not presented evidence that would allow the Court to

20   make a finding of likelihood of success on the merits for purposes of expedited emergency

21   relief.

22             C.      Irreparable Harm

23             Petitioner asserts that he is likely to suffer irreparable harm because his rights under

24   the Fifth Amendment's Due Process clause are being violated by detaining him for a

25   prolonged period without providing him an individualized bail hearing before a neutral

26   adjudicator and by failing to protect him from COVID-19's dangers. (Doc. No. 12-1 at 26.)

27             Petitioner argues that a recent case in the Central District of California found that

28   the conditions at Adelanto was a violation of a civil detainee's rights. *Bravo Castillo v.*

1    *Barr*, 20CV605 TJH (AFMx), slip op. Petitioner proffers evidence in the form of attorney

2    declarations, newspaper articles and public officials' statements on OMDC's conditions to

3    demonstrate that Respondents are not taking reasonably available measures to protect the

4    civil detainees in their care. (Doc. No. 12-1 at 27.) However, most of the evidence presented

5    by Petitioner is hearsay and speculative. *See Lopez-Marroquin v. Barr*, No. 20cv682-LAB

6    (MDD), 2020 WL 1905341, at *2 (S.D. Cal. Apr. 17, 2020).

7            Petitioner does assert in a declaration through his counsel that OMDC does provide

8    foam soap for hand-washing and instructions have been provided to the detainees by

9    medical personnel on ways to prevent the spread of COVID-19. (Doc. No. 12-2 at 107.)

10   Petitioner asserts that the bathrooms and showers are cleaned and disinfectant is provided

11   to the detainees who perform the cleaning. (*Id.*) Further, officers are measuring detainees'

12   temperatures. (*Id.*) There are some facts, such as the fact that the bathrooms are cleaned

13   approximately three times a day (which was the same amount prior to the COVID-19

14   outbreak) and that there are eight people housed in a four-meter by six-meter cell, that are

15   concerning to the Court. (*Id.*) However, the Court agrees with Respondents that Petitioner

16   has failed to show that the precautions Respondents have taken are so "objectively

17   unreasonable" that they violate his substantive due process rights under the Fifth

18   Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

19           Further, Petitioner alleges that he believed he was suffering from a temperature,

20   however, he did not seek medical help. (Doc. No. 12-2 at 108.) He also alleges that his

21   temperature was being taken at this time and was registering as normal. (*Id.* at 108–09.)

22   Petitioner also asserts based on the declaration of Dr. Lydia Grypma that he is at a

23   heightened risk of contracting COVID-19 and a more severe outcome with COVID-19 due

24   to his underlying health condition. (Doc. No. 17 at 1.) Dr. Grypma based her evaluation on

25   a 2018 chest x-ray ordered by IHSC, an August 18, 2019 IHSC clinic visit for chest pain

26   due to severe coughing, and Petitioner's own records from Kazakhstan including a medical

27   record from his 2017 hospitalization indicating diagnoses of "right sided chronic

28   bronchopneumonia, confirmed by chest x-ray and treated with bronchodilators

1   ("inhalers")" and a 2005 chest x- ray indicating "right central pneumonia." (*Id.* ¶ 4.)

2   However, Respondents provide a declaration of Dr. Philip Farabaugh in which he

3   concludes, based on the same evidence, that Petitioner is not at a heightened risk for severe

4   complications from COVID-19. (Doc. No. 22 at 2–4.) Furthermore, Petitioner is not on

5   ICE's list of medically-vulnerable detainees.[1] (Doc. No. 16 at 2.)

6   　　　While the Court will not decide whether Petitioner is at heightened risk of having a

7   more severe outcome of COVID-19, it does not impact the Court's finding that Petitioner

8   has not adequately pled irreparable harm. Petitioner has again failed to plead that

9   Respondents have taken "objectively unreasonable" precautions. Accordingly, Petitioner

10   has not established irreparable harm.

11   　　　**D.**　　**Public Interest**

12   　　　**Petitioner still remains in quarantine. Specifically, Petitioner is requesting that**

13   **the Court release someone who has no status and would have to rely on an already**

14   **impacted medical system. As the Court previously found, releasing someone exposed**

15   **to the virus or someone with the virus into the public is not in the public interest.**

16   **Furthermore, OMDC is equipped to deal with cases of COVID-19. Accordingly, it is**

17   **simply not in the public interests to release Petitioner.**

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   _____

25

26   [1] Petitioner asserts that he is not on ICE's list of medically-vulnerable detainees at OMDC, and thus, would not be a member of the subclass as defined in *Alcantara et al. v. Archambeault et al.*, No. 20-cv-0756-DMS-AHG (S.D. Cal. Apr. 21, 2020). However, this Order does not alter or conflict with Judge

27   Sabraw's Order granting a temporary restraining order and ordering the immediate review of subclass members for release and the release of all subclass members suitable for release. (*Alcantara*, Doc. No.

28   38.)

1

## CONCLUSION

2      Based on the foregoing, the Court **DENIES** Petitioner's second motion for

3  temporary restraining order, (Doc. No. 12), and **GRANTS** Petitioner's motion to file

4  documents under seal, (Doc. No. 18.) The Seal Clerk is **ORDERED** to file these

5  documents **UNDER SEAL**.

6

7  **IT IS SO ORDERED.**

8  Dated:  May 13, 2020

9                                          Hon. Anthony J. Battaglia
10                                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-00539-AJB-AGS